Tracy L. Riley, Esquire
Attorney ID: 006862008
Michael E. Riley, Esquire
Attorney ID: 007511976
LAW OFFICES OF RILEY & RILEY
2 Eves Drive, Suite 109
Marlton, New Jersey 08053
(609) 914-0300
Attorney for Plaintiff, Marie Elena Pine

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | | |
|---|---|---|
| MARIE ELENA PINE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: 3:22-cv-02760 |
| vs. | : | |
| | : | |
| COUNTY OF OCEAN; | : | |
| COMMISSIONER, JOSEPH H. VICARI; | : | |
| COMMISSIONER, VIRGINIA E. HAINES; | : | |
| COMMISSIONER, BARBARA JO CREA; | : | |
| TRACY MAKSEL; | : | |
| JOHN DOES 1-10; and JANE DOES 1-10; | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF, MARIE ELENA PINE, OPPOSITION TO ALL DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(B)(6)**

**TABLE OF CONTENTS**

Table of Citations ...............................................................................................

Statement of Facts ............................................................................................   1

Legal Argument ................................................................................................   8

I.      THE 12(B)(6) STANDARD…………………………………………….   8

II.     BECAUSE THE COMPLAINT CLEARLY SETS FORTH A
        HISTORY OF REPEATED SEXUAL HARASSMENT, RATHER
        THAN A DISCRETE ACT OR ACTS, THE CONTINUING
        VIOLATION THEORY APPLIES SO THAT THE STATUTE OF
        LIMITATIONS DID NOT BEGIN TO RUN UNTIL MAY 2021, THE
        LAST DATE THAT DEFENDANT VICARI COMMITTED AN ACT
        OF HARASSMENT……………………………………………………   10

        A.      Because the Complaint Obviously Alleges a Pattern of
                Sexual Harassment, the Continuing Violation Doctrine Tolls
                the Running of the Statute Until the Final Act Has Occurred
                or the Conduct Has Ceased. …………………………………….   11

        B.      Even if Certain Discrete Acts Could be Identified that
                Would Trigger the Statute, Other Equitable Considerations
                Further Compel That All of Plaintiff's Claims Proceed Beyond
                the Pleading Stage. …………………………………………….   13

III.    THE ALLEGATIONS OF SEXUAL HARASSMENT IN THE
        COMPLAINT  SET FORTH A PARADIGMATIC, TEXTBOOK
        EXAMPLE OF A HOSTILE WORK ENVIRONMENT, MAKING
        THE DEFENDANTS' ARGUMENTS FRIVOLOUS………………………   15

        A.      Plaintiff's Allegations of Multiple Years of Sexual Abuse
                and Harassment Set Forth More than a Mere Prima Facie
                Case of Hostile Work Environment. ………………………..   15

        B.      The Individual Defendants All Aided and Abetted Vicari,
                Who was the Principal Violator, in his Harassment and
                Contributed to the Hostile Work Environment. …………….   19

i

C.      Plaintiff Has Clearly Alleged that All of the Defendants
        Committed Acts of Retaliation Because She Reported
        Vicari and/or Filed this Complaint.……………………………...        22


IV.     ALTHOUGH PLAINTIFF'S ALLEGATION THAT DEFENDANT
        VICARI HAD A SUPERVISORY ROLE AND HAD POWER OVER
        HER EMPLOYMENT IS SUFFICIENT AT THE PLEADING
        STAGE, DEFENDANT VICARI IS A SUPERVISOR AS A MATTER
        OF LAW, REGARDLESS OF THE NOMINAL TITLE HE HELD,
        UNDER THE LAD'S EXPANSIVE DEFINITION………………………        24


V.      PLAINTIFF PINE HAS ADEQUATELY PLED CLAIMS FOR
        RELIEF PURSUANT TO 42 U.S.C.A 1983 AND THE NEW JERSEY
        CIVIL RIGHTS ACT, AS SEXUAL HARASSMENT IN THE WORK
        PLACE CONSTITUTES A DEPRIVATION OF EQUAL PROTECTION
        UNDER THE FOURTEENTH AMENDMENT …………………………        27

        A.      Defendant's Argument With Regard to the §1983 Claims
                are Frivolous as the Allegations of the Complaint Patently
                Allege Sexual Harassment and Discrimination in the Work
                Place, Committed by a State Actor. ………………………………        27

        B.      Plaintiff Pine's Monell Claim Against Ocean County for
                Failure to Train is Unassailable. …………………………………        29

        C.      Because the New Jersey Civil Rights Act Is Interpreted in
                Accordance with §1983, Plaintiff Pine Has Adequately
                Alleged a Claim. …………………………………………………        32


VI.     Conclusion ………………………………………………………………….        34

## TABLE OF AUTHORITIES

Cases cited:

Aguas v. State,
220 N.J. 494, 525 (2015) ……………………………………………………… 24

AMTRAK v. Morgan,
536 U.S. 101 (2002) …………………………………………………………… 11, 12

Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009) ……………………………………………….. 9

Bair v. City of Atl. City,
100 F. Supp. 2d 262, 267 (D.N.J. 2000)……………………………………….. 27, 30, 31

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (U.S. 2007) ……………………………………………… 8, 9

Bonenberger v. Plymouth Twp.,
132 F.3d 20, 23 (3d Cir. 1997) ……………………………………………… 28, 30

Caggiano v. Fontoura,
354 N.J. Super. 111, 132 (App. Div. 2002) ………………………………….. 10, 17

Cavuoti v. N.J. Transit Corp.,
supra, 161 N.J. 107 at 124-25, 735 A.2d 548………………………………….. 25

Cicchetti v. Morris County Sheriff's Office,
194 N.J. 563, 591 (2008) …………………………………………………… 20, 21

City of Canton v. Harris,
489 U.S. 378, 388 (1989)……………………………………………………… 30

Conley v. Gibson,
355 U.S. 41, 47 (1957) ……………………………………………………… 8, 9

Crighton v. Schuylkill Cty.,
882 F. Supp. 411, 414 (E.D. Pa. 1995)………………………………………… 28

Cutler v. Dorn,
196 N.J. 419, 432 (2008) …………………………………………………… 16, 17

DeSantis v. N.J. Transit,
103 F. Supp. 3d 583, 591 (D.N.J. 2015) …………………………………… 21

Doe v. Pennridge Sch. Dist.,
413 F. Supp. 3d 393 (E.D. Pa. 2019)………………………………………….. 17, 27

Entrot v. BASF Corp.,
359 N.J. Super. 162, 174-75 (App. Div. 2003)……………………………….. 26

Falat v. County of Hunterdon,
2018 N.J. Super. Unpub. LEXIS 1784, slip op at 15-16 (App. Div. 2018)............   12

Faragher v. City of Boca Raton,
118 S. Ct. 2275, 2284 (1998) .............................................................   32

Filgueiras v. Newark Pub. Sch.,
426 N.J. Super. 449, 468 (App. Div. 2012). .............................................   33

Galligan v. Westfield Centre Service, Inc.,
82 N.J. 188, 191 (1988).....................................................................   13, 14

Gormley v. Wood-El,
218 N.J. 72, 98 (2014) .....................................................................   12

Green v. Jersey City Bd. of Educ.,
177 N.J. 434, 448 (2003).....................................................................   23

Hottenstein v. City of Sea Isle City,
977 F. Supp. 2d 353, 365 (D.N.J. 2013). ...............................................   33

Hurley v. Atl. City Police Dep't,
174 F.3d 95, 127 (3d Cir. 1999) .........................................................   21, 31

Konstantopoulos v. Westvaco Corp.,
112 F.3d 710, 717 (3d Cir. 1997) ........................................................   17

Lapolla v. County of Union,
449 N.J. Super. 288, 298 (App. Div. 2017) .............................................   12

Lehmann v. Toys 'R' Us, Inc.,
132 N.J. 587, 605 (1993).........................................................   16, 17, 18, 19, 24, 25

McCarthy v. Care One Mgmt.,
No. A-2542-19, 2021 N.J. Super. Unpub. LEXIS 1419, at *22-23
(App. Div. July 12, 2021) ..................................................................   21

Monell v. New York City Dept. of Social Services,
436 U.S. 658 (1978) ........................................................................   30

Raspa v. Off. of Sheriff of Gloucester,
191 N.J. 323, 335 (2007).....................................................................   15

Rezem Family Associates, LP v. Borough of Millstone,
423 N.J. Super. 103, 115 (App. Div. 2011). ...........................................   33

Rios v. Meda Pharm., Inc.,
247 N.J. 1, 9-10 (2021) .....................................................................   15, 16, 17, 18, 24

Rodriguez v. Raymours Furniture Co., Inc.,
225 N.J. 343, 347 (2016) …………………………………………………………... 15

Rowan v. Hartford Plaza Ltd, LP,
No. A-0107-11T3, 2013 N.J. Super. Unpub. LEXIS 766, at *18
(App. Div. Apr. 5, 2013) …………………………………………………………… 21, 22

Shepherd v. Hunterdon Developmental Ctr.,
174 N.J. 1, 18 (2002) …………………………………………………………….. 11, 16, 18

Starnes v. Butler Cty. Court of Common Pleas,
971 F.3d 416, 428 (3d Cir. 2020). ………………………………………………… 27

State v. United States Steel Corp.,
22 N.J. 341, 358-59 (1956) …………………………………………………………… 14

Stoneking v. Bradford Area Sch. Dist.,
882 F.2d 720 (3d Cir. 1989), cert. den., 493 U.S. 1044 (1990)…………………….. 28

Tarr v. Ciasulli,
181 N.J. 70, 83 (2004) …………………………………………………………... 20, 21

Taylor v. Metzger,
152 N.J. 490, 504 (1998) …………………………………………………………… 17, 18, 30

Vance v. Ball State University,
133 S. Ct. 2434, 2443 (2013) ……………………………………………………… 25

Victor v. State,
203 N.J. 383, 409(2010)…………………………………………………………….. 23

West v. Atkins,
487 U.S. 42, 48 (1988) …………………………………………………………… 27, 28

Whitaker v. Mercer Cty.,
65 F. Supp. 2d 230, 243 (D.N.J. 1999) ……………………………………………… 32

Wilson v. Wal-Mart Stores,
158 N.J. 263, 272-73 (1999) ………………………………………………………… 10, 11, 12

Zaccardi v. Becker,
88 N.J. 245, 256 (1982)……………………………………………………………… 13, 14

U.S. Code cited:

42 U.S.C. § 1983 ………………………………………………………………..   28, 29, 33

New Jersey Statutes cited:

N.J.S.A. 10:5-12 (a) and (e) ……………………………………………………   20

N.J.S.A. 10:5-12(d) ………………………………………………………..   23

N.J.S.A. 10:6-2(c) ………………………………………………………   33

## Statement of Facts

Plaintiff, Marie Elena Pine ("Pine") filed her original complaint on May 11, 2022 and an Amended Complaint on May 20, 2022, setting forth in painstaking detail the decades long sexual abuse and harassment she suffered at the hands of Defendant Joseph H. Vicari ("Vicari"). Plaintiff's Complaint further sets forth in detail, despite the fact that detail is not required in a complaint nor to defeat a Motion to Dismiss, how the Individual Defendants ("IDs"), Virginia E. Haines ("Haines"), Barbara Jo Crea ("Crea") and Tracy Maksel ("Maksel") aided and abetted Vicari as the principal violator. As this Court will come to conclude, the current Motions to Dismiss filed by all of the Defendants lack any merit whatsoever. Their distortion of the operative facts, and complete ignorance of both the legal standards and operative legal doctrines that govern this dispute, make their motions frivolous.

Plaintiff Pine has been employed by the Defendant, County of Ocean ("OC"), since July 21, 1998, and was first assigned to the Office of Senior Services. The Complaint alleges, in no uncertain terms, that Plaintiff was subjected to over two decades of intimidation, a hostile work environment, physical sexual abuse, emotional abuse, and sexual harassment. As a summary, throughout these two decades, Vicari would make unwelcome and unsolicited passes at Plaintiff; he would physically place himself in such a way that Plaintiff could not move, and he would rub onto the Plaintiff's breasts; he would repeatedly tell Plaintiff how attractive she was and that he could not believe Plaintiff was not dating anyone; he would call the Plaintiff all hours of the night to make sure she was not with someone else; and he would put his hand on Plaintiff's thigh under the table at county meetings. (Complaint, ¶¶12-30). In short, the Complaint sets forth a textbook example of sexual abuse and a hostile work environment.

1

Although the Complaint alleges years of constant sexual abuse, certain particular incidents are set forth in detail as particularly telling. Vicari required Plaintiff to take him to work events, and mandated his presence by indicating that it was part of Plaintiff's job to accompany him. After one of these events in Monmouth County, he insisted that Plaintiff have dinner with him. In another instance, he directed Plaintiff to deliver Senior Services paperwork to his home, while his wife was out of town, once again making clear to Plaintiff that it was her job to follow his commands to the letter. In fear of losing her job and with the need to provide for her two children, Plaintiff complied. When Plaintiff arrived at Vicari's home he advised Plaintiff that his wife wasn't home, and he wanted to show her the house. Vicari reminded Plaintiff that HE WAS THE BOSS, and that she therefore needed to do what he asked. He then made advances at the Plaintiff and tried to undress her. In fear, Plaintiff froze as Defendant Vicari began unbuttoning her shirt, put his hand under her shirt, and fondled her breast. (Complaint, ¶¶32-41)

And that is only one of many incidents that were described in the Complaint. Other specific incidents include:

- On March 10, 2005, the Ocean County Federation of Republican Women named Defendant Vicari as Man of the Year and Plaintiff, then Marie Elena O'Connor, as Woman of the Year. In keeping with his prior incidents of abuse, Joseph Vicari used this as an opportunity to continue to make advances at the Plaintiff.

- In November 2017, after Plaintiff became the Building Facilitator of the Southern Service Center in an unsuccessful attempt to get away from Vicari, he nonetheless tracked her down solely to intimidate and harass the Plaintiff. He orchestrated a meeting so that it would occur where Plaintiff worked, asked Plaintiff's co-worker where she was, and sought Plaintiff out once again to sexually assault and harass her.

- On December 16, 2017, Plaintiff attended a breakfast at a restaurant. Vicari was also there, stalked the Plaintiff at the event, and made physical advances at her.

- On or about August 29, 2018, Plaintiff was at an event with Congressman Tom McArthur. Vicari approached the Plaintiff and told her that "he could really make her happy" and " her breasts were beautiful." He then sexually assaulted and harassed Plaintiff by rubbing up against her.

- On or about May 15, 2019, Vicari did the same thing and sexually assaulted and harassed the Plaintiff in her office immediately prior to a ribbon cutting ceremony. After the ceremony, he directed Plaintiff to give him a private tour of the facility, using the opportunity to once again harass Plaintiff.

The Complaint thereby provides both a general description of the sexual harassment Plaintiff Pine suffered, as well as specific instances of abuse. (Complaint, ¶¶42-43; 61-81) All of these advances were unwanted, and all of these advances were tolerated because of Vicari's position of power over the Plaintiff.

The Complaint further makes clear that Vicari threatened Plaintiff's employment with Ocean County. Vicari constantly insinuated that if she reported him, she would not only not get any future promotions, but Plaintiff would lose her job. Even after the Plaintiff obtained a transfer to a different department in May 2011 to get away from Vicari, his sexual assault and sexual abuse nonetheless continued. He would purposefully hold meetings in the third-floor conference room because Plaintiff's office was right next door. He would then wander into Plaintiff's office and grab her breasts, yet Plaintiff remained powerless because of fear of losing her job. In fact, Plaintiff was denied a promotion to Director of Office of Senior Services in December 2013 because she refused to yield to Vicari's abuse. Making clear that he still had the ability to control Plaintiff's employment with the County of Ocean, Vicari told the Plaintiff, "You didn't get the job because of me." (Complaint, ¶¶31, 46-56) The Complaint thereby makes clear that Defendant Vicari threatened Plaintiff with substantial repercussions in connection with her employment if she either reported his sexual misconduct or otherwise rebuffed his advances, and that he intentionally prevented her from receiving a promotion.

Notably, the last of these improper sexual advances occurred in March and May 2021, one year before the filing of the Complaint.  In March of 2021, Vicari brought Director Stephen

Scaturro to tour the Ocean County Southern Service Center Nutrition facility. While Director

Scaturro was occupied elsewhere, Vicari cornered Plaintiff again to sexually assault and harass

her by fondling her breasts and telling her how good she looked. Two months later, on May 13,

2021 at 2:17 p.m., Plaintiff received a telephone call from a blocked phone number – Defendant

Vicari. He left a message, and within minutes called again. Anticipating a relentless series of

contacts she could not avoid, Plaintiff answered the call and suffered another sexually charged

and unwanted conversation. Vicari proceeded to regale her with tales of how another woman was

obsessed with him, and how the woman was jealous of the (non-existent) relationship between

he and Plaintiff. At this point, Plaintiff had suffered enough abuse and finally summoned the

courage to stand up to Defendant Vicari. His utterly tone-deaf and narcissistic response was

telling: "nobody will make you as happy as I did." (Complaint, ¶¶82-97)

After Plaintiff finally reported Vicari's conduct after the 2021 incidents, Vicari *still*

*showed that he had power over Plaintiff's employment.*  Plaintiff sought a transfer back to Senior

Services, and both the Director of Human Resources and the Director of the Senior Center

agreed to the transfer subject to the Commissioners' approval. Despite the clear and obvious

allegations of abuse, Defendant Vicari was still given veto power over Plaintiff's transfer. He

unfortunately had a supervisory role over the department where Plaintiff was assigned, and based

on the Commissioner assignments, Defendants Vicari, Haines and Crea had the ability to agree

or disagree with the transfer. All three of these defendants refused to transfer Plaintiff to the

Senior Center in retaliation for her reporting the actions of Defendant Vicari. (Complaint, ¶¶109-

113) This act of retaliation thereby establishes one example of how Defendants Vicari, Haines,

and Crea aided and abetted Vicari's harassment.

4

Notably, Defendant Haines completely glosses over this portion of the Complaint, arguing that "[w]ith regard to Defendant Haines, the only allegations in Plaintiff's complaint are found in paragraphs 73 through 78 ..." Similarly, Defendant Crea appears to argue that the allegations against her are isolated to paragraphs 100-104. (IDs Brief, p. 2). Obviously, this is incorrect, as the refusal to transfer Plaintiff is alleged in paragraphs 109-113 to be an act of retaliation for reporting Vicari and applies to all of the Defendants other than Tracy Maksel.

Plaintiff's Amended Complaint further establishes how the other individual defendants aided and abetted Defendant Vicari, the "principal violator," in his decades long campaign of sexual harassment. In connection with the ribbon cutting ceremony, Defendant Haines was quoted during this ceremony as stating, "With more than 173,000 seniors living in Ocean County, the senior programs and services under the leadership of Freeholder Vicari are second to none." At the time Defendant Haines made this statement she was fully aware that Defendant Vicari had been named in a sexual harassment lawsuit in 2014. At the time Defendant Haines made this statement she was fully aware that the Defendant, Ocean County had paid $550,000 to settle that exact lawsuit. (Complaint, ¶¶76-78) In addition to the act of retaliation noted in the preceding paragraph, Defendant Haines aided and abetted Vicari by not only failing to take any action to curb the hostile work environment he created, but by touting his accomplishments and intentionally concealing Vicari's actions.

Moreover, on September 28, 2021, Plaintiff sat with Defendant Crea at a Chamber of Commerce Women in Business Meeting at the Hotel LBI. Plaintiff and Defendant Crea spoke at length about Defendant, Ocean County.  Defendant Crea asked Plaintiff why she was not with Senior Services. Plaintiff told Defendant Crea about the sexual assaults and sexual harassment that she had been subjected to by Defendant Vicari. On February 28, 2022, Defendant Crea

called Plaintiff to discuss an upcoming meeting they were both scheduled to attend. Defendant Crea did not want Plaintiff to reveal their prior conversations. (Complaint, ¶¶100-104) In short, Defendant Crea aided and abetted Vicari by trying to muzzle the Plaintiff and prevent disclosure. Like Defendant Haines, Defendant Crea had knowledge of the hostile work environment that Vicari created but intentionally sought to conceal this information. Once again, these acts are in addition to the act of retaliation described above.

Defendant Tracy Maksel, in turn, was added as a Defendant based on her actions after the Complaint was originally filed on May 11, 2022. On or about April 20, 2022, Plaintiff provided Ocean County with a spoliation letter. After meeting with the Director of Employee Relations in 2021, Defendant Maksel was made aware of Plaintiff's complaints of sexual assault and harassment. Plaintiff has attended the Chamber of Commerce Networking event every year on behalf of her employer. Despite the fact that throughout her decades of service with the County of Ocean, Plaintiff was never required to attend work events with other employees, on May 11, 2022 (the day Plaintiff filed her complaint), Maksel sent Plaintiff an email inquiring about others attending the event with her. On May 18, 2022, Maksel sent Ocean County employee, Cheryl Meyer, to a Mayor's Town Hall Briefing with the Plaintiff. The actions of the Defendant, Tracy Maksel were only taken after the spoliation letter was sent and the civil complaint was filed. (Complaint, ¶¶121-129) In retaliation for reporting Vicari's conduct and for filing the Complaint, Plaintiff's work conditions were altered by requiring her to be monitored by another co-employee, a condition that had never been imposed prior to Plaintiff's protected action. Defendant, Maksel also added to Plaintiff's job duties and responsibilities.

Finally, the Compliant makes direct allegations against Ocean County itself. On August 21, 2017, Plaintiff had a meeting with Keith Goetting, Director of Ocean County Department of

Employee Relations, and disclosed to Mr. Goetting that Defendant Vicari was sexually harassing her. Despite this complaint, no investigation was conducted and no action was taken by Defendant, County of Ocean. (Complaint, ¶¶59-60) After the final incidents in March and May of 2021, Plaintiff contacted Robert A. Greitz, Director of Employee Relations, a representative of the Defendant, County of Ocean, to once again report the years of sexual assault and harassment by Defendant Vicari. Plaintiff met with Director Greitz and Personnel Specialist, Patricia Burke, on several occasions to report Vicari's multiple incidents of sexual assault and sexual harassment. Plaintiff complied with the reporting procedures by selecting Director Greitz to report the intimidating, hostile, offensive, sexually harassing work environment she was subjected to. Despite their knowledge of Defendant Vicari's prior history, nothing has been done to hold him accountable for his actions. (Complaint, ¶¶98-116)

Yet inaction is not the Ocean County's only contribution to Plaintiff's situation; the Defendant, Ocean County has a custom, policy and practice of failing to supervise and train their employees on discrimination and harassment. Plaintiff has been employed with the Defendant, County of Ocean for over 23 years.  In all of her years of service, Plaintiff herself has only received training once prior to reporting the harassment and hostile work environment. Despite the prior lawsuit filed in 2014, Rosemary Mennona v. Joseph Vicari, et al., Defendant, County of Ocean failed to provide training to all of their employees. (Complaint, ¶¶117-120) Although unnecessary at the pleading stage in response to a Motion to Dismiss, the minimal evidence that exists establishes OC's utter lack of training. OC conducted both Discrimination and Accommodation Training as well Harassment and Discrimination Training for Supervisors on multiple occasions since 2003. In fact, since 2003 there have been hundreds of them, which facially sounds impressive and proactive – the problem is that, as the attached attendance

7

documents make clear, no one attended them, nor apparently was required to attend them. Of the hundreds of sessions offered, nearly all of them had 0 enrollees. (Exhibit A – Training Documents) The training was an obvious sham, for show only.

Of course, not a single one of these allegations is yet to be proven, but for the purposes of the instant motion, this Court must accept each and every one of them as true. The Defendants nonetheless still maintain that these facts do not establish a hostile work environment. If twenty years of being sexually groped, demeaned, and harassed on a continual basis does not create a hostile work environment, then the inevitable question that arises is what would constitute a hostile work environment in the Defendants' world. Ironically, the fact that the Defendants are unable to see that these allegations create the paradigmatic hostile work environment is itself telling of how accustomed to sexual harassment these Defendants actually are. Repeatedly fondling a woman's breasts, cornering her to make sexual advances, and making unwanted contact, all while threatening to punish the woman with job loss if she did not comply, are apparently so commonplace in Ocean County that the Defendants feel the Complaint does not even deserve to get past the pleading stage.

## Legal Argument

### I.    THE 12(B)(6) STANDARD.

The Supreme Court of the United States has set forth the definitive standard that District Courts must apply when faced with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court began by noting that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (U.S. 2007)(quoting Conley v.

Gibson, 355 U.S. 41, 47 (1957)).  In order to survive a 12(b)(6) motion, a claim "does not need detailed factual allegations," nor do the factual allegations have to establish a probability of success at the pleading stage. Id.

 On the contrary, the claim must simply contain sufficient factual allegations "to raise a right to relief above the speculative level." Id.  As long as the claimant pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the alleged violation, a Court should allow the claim to proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. at 556.  Although the Court criticized the manner within which Conley's "no set of facts" standard had been applied over the years, the Court concluded, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(civil claims must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Stated in the simplest terms, "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct." Id. at 563, fn 8.

The IDs (Haines, Crea and Maksel) argue that "[e]ven a most liberal reading of Plaintiff's first amended does not set forth any factual allegations that Defendants Haines, Crea or Maksel engaged in any sexually harassing conduct, abuse, or discrimination." (IDs Brief, p. 6) This argument is patently absurd. Even a *restrictive and overly illiberal* reading of the complaint shows that Plaintiff has set forth more than sufficient allegations of Vicari's harassment, and how the IDs aided and abetted him. And Vicari's arguments warrant no discussion whatsoever as he completely ignores the allegation of what transpired in March 2021, and makes utterly frivolous

9

arguments in connection with the applicable statute of limitations, as will be established in greater detail in the following section.

**II.   BECAUSE THE COMPLAINT CLEARLY SETS FORTH A HISTORY OF REPEATED SEXUAL HARASSMENT, RATHER THAN A DISCRETE ACT OR ACTS, THE CONTINUING VIOLATION THEORY APPLIES SO THAT THE STATUTE OF LIMITATIONS DID NOT BEGIN TO RUN UNTIL MAY 2021, THE LAST DATE THAT DEFENDANT VICARI COMMITTED AN ACT OF HARASSMENT.**

Despite the abject clarity of the Amended Complaint, all of the Defendants claim, in one form or another, that the multiple and repeated incidents of sexual harassment alleged would each constitute a "discrete act triggering the statute of limitations." In fact, the individual defendants' set forth a mere fraction of the overall sexual harassment (conveniently omitting those allegations that fall within the statutory period) and then glibly conclude, "Each of these discrete incidents triggered its own statute of limitations." (See Vicari Brief, pp. 17-20; see IDs' Brief, p. 10)  Based upon both the explicit arguments and the overall tenor of the Defendants' Briefs, the Defendants entirely ignore the continuing violation doctrine, which is unfortunate as that doctrine directly controls both the statute of limitations issue, as well as the contours of the hostile work environment.

In its simplest form, the doctrine states that a hostile work environment claim is timely "so long as at least one of a series of acts, which together created the hostile environment, fell within the statutory period." Caggiano v. Fontoura, 354 N.J. Super. 111, 132 (App. Div. 2002) In fact, our courts have further stated that "once a pattern of harassment has created a psychologically offensive work environment, the status quo of such continuous wrongful conduct can be based on the harasser's mere presence." Id. (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 272-73 (1999)) That is precisely what occurred here, as the final affirmative acts

10

alleged to have been committed by Vicari occurred in March 2021 and May 2021, while his

presence has been a constant factor throughout Plaintiff's employment.

**A.**      **Because the Complaint Obviously Alleges a Pattern of Sexual Harassment, the Continuing Violation Doctrine Tolls the Running of the Statute Until the Final Act Has Occurred or the Conduct Has Ceased.**

The Supreme Court of the State of New Jersey has stated, in unambiguous terms, that

"[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute

of limitations does not begin to run until the wrongful action ceases." Wilson, 158 N.J. at 272. If

the Plaintiff sets forth a pattern of continual injury resulting from repeated acts of sexual

harassment, "the cumulative effect of [this] series of discriminatory or harassing events

represents a single cause of action for tolling purposes." Accordingly, "the statute of limitations

period does not commence until the date of the final act of harassment." Id. at 273. Shortly

thereafter, the Supreme Court of New Jersey reaffirmed that "[i]n Wilson v. Wal-Mart Stores, this

Court recognized the continuing violation doctrine in a LAD case." Shepherd v. Hunterdon

Developmental Ctr., 174 N.J. 1, 18 (2002)

Relying in part on a "critical passage" contained in the United States Supreme Court

decision in AMTRAK v. Morgan, 536 U.S. 101 (2002), our Supreme Court explained the

difference between discrete acts and a hostile work environment:

> Hostile environment claims are different in kind from discrete acts. Their very nature
> involves repeated conduct. The "unlawful employment practice" therefore cannot be said
> to occur on any particular day. It occurs over a series of days **or perhaps years** and, in
> direct contrast to discrete acts, a single act of harassment may not be actionable on its
> own. Such claims are based on the cumulative affect of individual acts.
>
> ….
>
> In determining whether an actionable hostile work environment claim exists, we look to
> "all the circumstances," including "the frequency of the discriminatory conduct; its
> severity; whether it is physically threatening or humiliating, or a mere offensive
> utterance; and whether it unreasonably interferes with an employee's work performance."

> ... A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." ... It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. **Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.**

Id. at 19-20 (quoting Morgan, 536 U.S. at 114-118)(emphasis added). The New Jersey Supreme Court concluded that the Morgan "formulation of the continuing violation doctrine to be similar to the one advanced in Wilson, thereby applying to all hostile work environment claims brough pursuant to New Jersey's LAD." Id. at 21.

Finally, our Courts have stated that the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (the NJCRA) "is a means of vindicating substantive rights and is not a source of rights itself." Gormley v. Wood-El, 218 N.J. 72, 98 (2014). Since the Plaintiff's NJCRA claim is predicated upon the same conduct underlying her LAD claim, and since the statute of limitations for claims under the NJCRA is also two years, the viability of the NJCRA claim here rises and falls with the viability of the LAD claim.  See Lapolla v. County of Union, 449 N.J. Super. 288, 298 (App. Div. 2017); see also Falat v. County of Hunterdon, 2018 N.J. Super. Unpub. LEXIS 1784, slip op at 15-16 (App. Div. 2018).

In the present case, it appears that Defendant Vicari has simply misread the Amended Complaint, as he confuses May 2021 (the date in the Amended Complaint when the final contact between Plaintiff and Defendant Vicari occurred) with May 2020 (the date argued in Defendant's motion). More importantly, Defendant entirely ignores the incident that occurred in March 2021. Clearly, the substantial bulk of the allegations pertain to conduct that occurred more than two years before Plaintiff first filed her Complaint on May 11, 2022. However, two incidents of sexual harassment occurred within the statute of limitations.

12

In March of 2021, Defendant Vicari demanded that Plaintiff conduct a tour of the Ocean County Southern Service Center Nutrition facility for himself and Director Stephen Scaturro. While on the tour, Defendant Vicari cornered the Plaintiff, fondled her breasts, and told her how attractive she was. Two months later, he then placed multiple calls to the Plaintiff to inform her that another woman was jealous of the relationship between Plaintiff and Vicari. Then, once Plaintiff finally asserted herself after years of harassment and abuse by reporting Vicari's conduct, he abused his supervisory role over the department where Plaintiff was assigned to retaliate against her by refusing to transfer Plaintiff back to her previous position in the Senior Center, an act of retaliation that was aided and abetted by Defendants Haines and Crea. (Complaint, ¶¶82-92 and 109-113) The allegations against Maksel, in turn, center upon activity that occurred after the original complaint was filed. (Complaint, ¶¶121-129) Accordingly, all of the claims are timely.

**B.    Even if Certain Discrete Acts Could be Identified that Would Trigger the Statute, Other Equitable Considerations Further Compel That All of Plaintiff's Claims Proeed Beyond the Pleading Stage.**

The Supreme Court of the State of New Jersey has stated that "statutes of limitations are not self-executing." On the contrary, they must be raised by affirmative defense and are "subject to judicial modification in appropriate circumstances." Zaccardi v. Becker, 88 N.J. 245, 256 (1982). Our courts eschew "mechanistic application" of statutes of limitations in situations that "could unnecessarily sacrifice individual justice in particular circumstances." Id. The Courts have thereby established a "common law of limitations" to ameliorate the "injustice which would result from a literal reading of the general statutory language." Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 191 (1988). As our Supreme Court has stated:

> Unswerving, "mechanistic" application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without

> advancing these legislative purposes. On numerous occasions we have found "such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more equitable and countervailing considerations of individual justice." A "just accommodation" of individual justice and public policy requires that "in each case the equitable claims of opposing parties must be identified, evaluated and weighed." Whenever dismissal would not further the Legislature's objectives in prescribing the limitation, the plaintiff should be given an opportunity to assert his claim.

Id. at 192-93 (citations omitted).  Where a defendant uses the statute "as a sword rather than a shield … factors of vicarious enrichment become a dominant consideration which we are prone to remedy in equity and good conscience."  Zaccardi, 88 N.J. at 256 (quoting State v. United States Steel Corp., 22 N.J. 341, 358-59 (1956)).

    As will be established in greater detail in the following section, the Law Against Discrimination ("LAD") is remedial legislation that should be liberally construed to advance its purposes, and that its overall goal is nothing less than the eradication of the cancer of discrimination. Although the continuing violation doctrine is sufficient to toll the running of the statute, and encompass all acts that occurred prior to May 2020, equitable considerations compel that the statute of limitations should be relaxed in connection with any potential discrete act, given the extent of control and power that Vicari abused over the years. As Plaintiff Pine has stated throughout her complaint, she was paralyzed with fear for decades, unable to take action against him for fear of reprisal. Despite her best efforts to avoid Vicari, he nonetheless brazenly made her attempts repeatedly futile. Wherever she went, he tracked her down, harassed her, and threatened her with adverse employment consequences. In short, even if certain adverse actions could be deemed discrete acts, triggering the statute of limitations, the extent of Vicari's power and control prevented the Plaintiff from asserting her rights in relation to any specific act.

III.   **THE ALLEGATIONS OF SEXUAL HARASSMENT IN THE COMPLAINT  SET FORTH A PARADIGMATIC, TEXTBOOK EXAMPLE OF A HOSTILE WORK ENVIRONMENT, MAKING THE DEFENDANTS' ARGUMENTS FRIVOLOUS**.

The New Jersey courts have repeatedly and forcefully made clear that the LAD is "remedial legislation that should be liberally construed to advance its purposes," that "the clear public policy of this State is to abolish discrimination in the work place," and that its overall goal is "nothing less than the eradication of the cancer of discrimination." Rios v. Meda Pharm., Inc., 247 N.J. 1, 9-10 (2021); Raspa v. Off. of Sheriff of Gloucester, 191 N.J. 323, 335 (2007). Our Supreme Court has stated, "One searches in vain to find another New Jersey enactment having an equivalently powerful legislative statement of purpose, along with operative provisions that arm individuals and entities with formidable tools to combat discrimination." Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 347 (2016)

In the present case, Vicari astoundingly argues that "Plaintiff does not claim that her employment was negatively affected." He then completely ignores the clear and unmistakable sexual assault that occurred in March 2021, and concludes that the complaint "contains no basis to assert plaintiff was mistreated because of her gender." (Vicari Brief, pp. 28-29). The IDs argue that "Plaintiff does not contend that Defendants Haines, Crea or Maksel sexually harassed her" and that "none" of their "actions … constitutes discrimination, retaliation, sexual harassment or a hostile work environment." (IDs Brief, p. 14). Defendants Haines and Crea ignore that their refusal to consent to Plaintiff's transfer was an act of retaliation, and that their attempts at intentional concealment all aided and abetted Vicari. In fact, the individual defendants fail to even mention the aiding and abetting mechanism in their moving brief, and should be precluded from making any arguments as to aiding and abetting in their reply brief.

A.   **Plaintiff's Allegations of Multiple Years of Sexual Abuse and Harassment Set Forth More than a Mere Prima Facie Case of Hostile Work Environment.**

15

Our Supreme Court has noted that there are four elements a Plaintiff must satisfy to establish a cause of action under the LAD based on a hostile work environment: "… they must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd, 174 N.J. at 24. Hostile work environment claims "must be evaluated in light of 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Rios, 247 N.J. at 11 (quoting Cutler v. Dorn, 196 N.J. 419, 432 (2008))

The first prong of the analysis is easily established in this case, as Vicari's harassment was sexual in nature. Our courts have repeatedly stated:

> When the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied. Thus when a plaintiff alleges that she has been subjected to sexual touchings or comments, or where she has been subjected to harassing comments about the lesser abilities, capacities, or the "proper role" of members of her sex, she has established that the harassment occurred because of her sex.

Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 605 (1993). The fact that Vicari would even argue at this preliminary stage, after decades of literal sexual assault, that the complaint "contains no basis to assert plaintiff was mistreated because of her gender" is an insult and yet a further example of the abject misogyny he exudes.

With regard to the second prong, the Court must take into consideration the entirety of the surrounding circumstances, including the cumulative effect of the various incidents, bearing in mind 'that each successive episode has its predecessors, that the impact of the separate

16

incidents may accumulate, and that the work environment created may exceed the sum of the individual episodes.'" Lehmann, 132 N.J. at 607; see Cutler, 196 N.J. at 432 ("In most cases, it is the cumulative impact of separate successive incidents that cements the hostile work environment.") The existence of sexual harassment may take the form of unwanted physical contact and abuse, threatening behavior, "and even mere presence if the prior harassment has been sufficiently severe." Doe v. Pennridge Sch. Dist., 413 F. Supp. 3d 393 (E.D. Pa. 2019); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 717 (3d Cir. 1997) (being forced to work in proximity to former harassers is a "significant factor weighing in favor" of hostile work environment claim). In many cases, and certainly the present case, "An actionable claim under LAD based upon a hostile work environment frequently arises out of repeated incidents that take place over time and by their cumulative effect make it unreasonable and unhealthy for the plaintiff to remain in that work environment." Caggiano, 354 N.J. Super. at 126.

The particular identity of the offender directly relates to the severity as well as whether the conduct was sufficiently pervasive. As our Supreme Court has stated:

> A supervisor has a unique role in shaping the work environment. Part of a supervisor's responsibilities is the duty to prevent, avoid, and rectify invidious harassment in the workplace. An employer has a clear duty not only to take strong and aggressive measures to prevent invidious harassment, but also to correct and remediate promptly such conduct when it occurs.

Taylor v. Metzger, 152 N.J. 490, 504 (1998) The severity is thereby impacted by the identity of the actor as "the severity of a remark can be 'exacerbated' when it is uttered by a supervisor." Because supervisors are tasked with preventing, as opposed to creating, a hostile atmosphere, "invidious harassment by a supervisor can have a greater impact than misconduct by fellow employees." Rios, 247 N.J. at 11-12. Harassment "from such an individual carries with it the power and authority of the office." Moreover, when the violator is "both plaintiff's superior and

her offender, plaintiff could not seek the redress that would otherwise be available to a victim of invidious workplace harassment, namely, resort to her own supervisor." Taylor, 152 N.J. at 505. In a passage that could equally apply to the present case, the Supreme Court determined that "plaintiff's dilemma was acute and insoluble. She had nowhere to turn." Id.

In determining the legality of the conduct, the Courts employ an objective standard focusing on the harassing conduct itself and "not its effect on the plaintiff or on the work environment." Rios, 247 N.J. at 12. In fact, our State's "test of severity adopted by this Court in Lehmann does not in all cases require evidence of an actual change in working conditions in order for there to be a hostile work environment," precisely because "discrimination itself is the harm that the LAD seeks to eradicate…." Taylor, 152 N.J. at 505. Notably, "Loss of a tangible job benefit is not necessary for a hostile work environment claim because the harassment itself affects the terms or conditions of employment." Shephard, 174 N.J. at 28.

With regard to the "severe and pervasive" prong, the Defendants' argument here are insulting and border on the absurd. Plaintiff has not complained about an "offensive" environment, as the Defendants glibly conclude. Obviously, "coldness, lack of civility, or failure to provide employees with Christmas gifts or party invitations, although inhospitable and boorish, cannot qualify as 'severe or pervasive' conduct under the LAD." Moreover, an office environment characterized by rudeness or a lack of sensitivity alone cannot be deemed hostile and a form of actionable harassment, and "simple teasing, offhand comments, and isolated incidents do not constitute discriminatory changes in the terms and conditions of one's employment." Shepherd, 174 N.J. at 25-26. Defendant Vicari sexually abused and harassed the Plaintiff for decades, and repeatedly threatened to take adverse employment action, including termination, if Plaintiff sought to inform anyone of his harassment. His actions are literally the

precise evil that the LAD seeks to eradicate, yet decades of sexual fondling and unwanted sexual contact apparently are not severe and pervasive enough for these Defendants. Ever after the Plaintiff demonstrated the courage to report this abuse, the Defendant's response was she needed a chaperone to enter various buildings in the county.

To be clear, every single Defendant is entitled to a vigorous defense, and the Plaintiff expects the Defendants to fight these allegations to the fullest extent. However, to claim that the *extensive allegations themselves, which must be taken as true at this point,* somehow do not establish severe and pervasive conduct simply ignores established NJLAD jurisprudence. The objective tests set forth in prongs three and four obviously seek to exclude an "idiosyncratic response of a hypersensitive plaintiff[.]" Lehmann, 132 N.J. at 614. To even intimate that years of unwanted sexual touching would only affect a "hypersensitive plaintiff," as the Defendants have clearly done here, expresses cruelty beyond measure. Once again, the allegations of the Complaint show that Defendant Vicari literally engaged in sexual assault - if repeated sexual assault over a period of years is not "severe and pervasive" enough for Defendants, then it is difficult to envision what precisely would qualify in the Defendants' view.

**B.** **The Individual Defendants All Aided and Abetted Vicari, Who was the Principal Violator, in his Harassment and Contributed to the Hostile Work Environment.**

The individual defendants completely miss the mark in terms of their own liability. Plaintiff has not claimed that these defendants were directly responsible for the initial creation of the hostile work environment as the active sexual abuser(s). Rather, these individuals *contributed* to the hostile work environment by aiding and abetting Vicari in his decades long campaign of sexual misconduct. All of the individual defendants (which includes Vicari, Haines, Crea and Maksel) further engaged in acts of both retaliation and intentional concealment which allowed

19

Vicari to perpetuate his abuse. The Defendants entire argument is simply nonsensical in the context of a motion to dismiss. The Complaint clearly and unequivocally alleges the failure to agree to the transfer was an act of retaliation, and that the individual defendants' actions aided and abetted Vicari. After reciting only a portion of the allegations contained in the Complaint, Defendants simply conclude, "None of these actions attributed to these defendants constitutes discrimination, retaliation, sexual harassment, or a hostile work environment. "(IDs Brief, p. 14) This is the quintessential dispute that cannot be resolved at this stage – this Court must accept Plaintiff's allegations of retaliation and assistance as true, an essential component of the 12(b)(6) analysis that the Defendants simply ignore.

Clearly, the main thrust of the LAD is to hold employers liable for acts that violate the statute. The Supreme Court of the State of New Jersey has nonetheless made clear that the LAD permits liability to be imposed upon other individuals (such as supervisors and co-employees) "beyond employers and provides that '[i]t shall be … unlawful discrimination … [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD]….'" Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 591 (2008); N.J.S.A. 10:5-12 (a) and (e). Our courts have thereby held that "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person'" under N.J.S.A. 10:5-12(e). Id.

Because the Legislature failed to define the terms 'aid' and 'abet' within the statute, our courts have applied general principles of statutory construction. Applying these principles, our Supreme Court has held:

> Here, "aid" and "abet" are included with the series of words "incite," "compel,"
> and "coerce." The common dictionary definitions of these words prove helpful.

20

> Among other things, "aid" means "[t]o give help or assistance to," Webster's II
> New College Dictionary 23 (rev. updated ed.2001); "abet" means "[t]o incite,
> encourage, or assist, esp. in wrongdoing," id. at 2; "incite" means "[t]o provoke to
> action," id. at 560; "compel" means "to force, drive, or constrain," id. at 229; and
> "coerce" means "[t]o force to act or think in a given way by pressure, threats, or
> intimidation," id. at 217. All of the words are similar in meaning and require
> active and purposeful conduct.

Tarr v. Ciasulli, 181 N.J. 70, 83 (2004).  Individual liability is appropriate when the Defendant

"knows that the other's conduct constitutes a breach of duty and gives substantial assistance or

encouragement to the other so to conduct himself." Id. (quoting Section 876(b) of the

Restatement)). To determine whether the individual has provided substantial assistance or

encouragement to the "principal violator," a court should analyze the five factors set forth in the

Restatement: (1) the nature of the act encouraged, (2) the amount of assistance given by the

individual, (3) whether the individual was present at the time of the asserted harassment, (4) the

individual's relations to the others, and (5) the state of mind of the individual. Tarr, 181 N.J. at 84

(citing Restatement (Second) of Torts, § 876(b) comment d).

Finally, the District Court for the District of New Jersey has already recognized that the

"New Jersey courts have held that an individual can aid and abet, not only the conduct of another

person, but that person's own conduct. That implies the availability of personal liability for a

violation of the NJLAD." DeSantis v. N.J. Transit, 103 F. Supp. 3d 583, 591 (D.N.J. 2015). Both

Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999) and Cicchetti make clear that "a

supervisor can be individually liable for his or her own affirmative LAD violations." Rowan v.

Hartford Plaza Ltd, LP, No. A-0107-11T3, 2013 N.J. Super. Unpub. LEXIS 766, at *18 (App.

Div. Apr. 5, 2013) And the New Jersey Courts made this explicit not long ago. See McCarthy v.

Care One Mgmt., No. A-2542-19, 2021 N.J. Super. Unpub. LEXIS 1419, at *22-23 (App. Div.

July 12, 2021)("Under this prong, the 'amount of assistance given by the supervisor,' and

'whether the supervisor was present' are factors that clearly establish [Defendant] substantially assisted in the violation. Again, she was the one who committed the violation.") In short:

> Based on the "broad and pervasive" reach of the LAD, and the requirement that it be "liberally construed" to effectuate its purpose, any suggestion that N.J.S.A. 10:5-12(e) permits individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct, appears to us to be untenable.

Rowan, slip op. at 19.

In the present case, New Jersey's jurisprudence of individual liability under the LAD makes clear that Vicari faces personal liability for his own conduct. Although an awkward intellectual construct, Vicari can aid and abet his own conduct under our law, which he did for nearly twenty years. Insofar as the other individual defendants are concerned, the allegations of the Complaint set forth sufficient "active and purposeful conduct" to compel denial of the Motions to Dismiss. With regard to Defendants Haines and Crea, Plaintiff has alleged that they intentionally sought to conceal Vicari's harassment, which thereby contributed to the hostile work environment. (Complaint, ¶¶73-78; 100-104) More importantly, Plaintiff has alleged that Vicari had a supervisory role over the department where Plaintiff was assigned, and that Defendants Vicari, Haines, and Crea refused to agree to Plaintiff's transfer to the Senior Center in retaliation for her reporting the actions of Defendant Vicari. (Complaint, ¶¶109-113) Finally, Plaintiff has alleged that Defendant Maksel committed an act of retaliation by imposing an unwarranted condition of employment – the need to have a co-employee monitor Plaintiff at the Chamber of Commerce Networking event  - because Plaintiff filed the instant complaint. (Complaint, ¶¶121-129). At this stage, no more is required.

### C.   Plaintiff Has Clearly Alleged that All of the Defendants Committed Acts of Retaliation Because She Reported Vicari and/or Filed this Complaint.

A plaintiff can establish a prima facie case of retaliation under the LAD by demonstrating: "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." Victor v. State, 203 N.J. 383, 409(2010). The explicit terms of the LAD itself makes it unlawful:

> to take reprisals against any person because that person has opposed any practices
> or acts forbidden under this act or because that person has filed a complaint,
> testified or assisted in any proceeding under this act or to coerce, intimidate,
> threaten or interfere with any person in the exercise or enjoyment of … any right
> granted or protected by this act.

N.J.S.A. 10:5-12d. Finally, although decided pursuant to the Conscientious Employee Protection Act (CEPA) our courts have stated that retaliation "need not be a single discrete action," but rather may include "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003)

That is precisely the situation in the present case. As a female, Plaintiff Pine is clearly within a protected class. Plaintiff Pine also engaged in two acts of protected activity that were known both to the employer and to the individual defendants herein. First, Plaintiff had a meeting with Keith Goetting, Director of Ocean County Department of Employee Relations, and disclosed to Mr. Goetting that Defendant Vicari was sexually harassing her. Despite this complaint, no investigation was conducted and no action was taken by Defendant, County of Ocean.

Plaintiff ultimately confronted Vicari directly. She then contacted Robert A. Greitz, Director of Employee Relations for Defendant OC, to report the years of sexual assault and

harassment by Defendant Vicari. She met with Director Greitz and Personnel Specialist, Patricia Burke on several occasions to report multiple incidents of sexual assault and sexual harassment. In retaliation for that protected act, Defendants Vicari, Haines and Crea refused to consent to her transfer. (Complaint, ¶¶98-99 and 109-113) Second, after filing the instant complaint and providing a spoliation letter, Defendant Maksel retaliated against her by requiring Plaintiff to be accompanied and monitored at an event that she had previously attended for years, every year, by herself. (Complaint, ¶¶121-129) That is all that is required to survive a Motion to Dismiss.

IV.   **ALTHOUGH PLAINTIFF'S ALLEGATION THAT DEFENDANT VICARI HAD A SUPERVISORY ROLE AND HAD POWER OVER HER EMPLOYMENT IS SUFFICIENT AT THE PLEADING STAGE, DEFENDANT VICARI IS A SUPERVISOR AS A MATTER OF LAW, REGARDLESS OF THE NOMINAL TITLE HE HELD, UNDER THE LAD'S EXPANSIVE DEFINITION.**

The Supreme Court of New Jersey has reaffirmed, "In the context of conduct that may give rise to vicarious liability for a hostile work environment, an 'expansive definition of supervisor' applies." Rios, 247 N.J. at 12. In Aguas v. State, 220 N.J. 494, 525 (2015), "the definition of a supervisor for purposes of claims based on sexual harassment giving rise to a hostile work environment, [was] a pivotal factor in the application of the agency principles set forth in Restatement § 219(2)(d)." The Supreme Court first noted that Lehmann "did not expressly define 'supervisor' for purposes of deciding vicarious liability sexual harassment cases under agency law," though the court alluded "to control [over] the day-to-day working environment." Id. (citing Lehmann, supra, 132 N.J. at 620) Accordingly, the Supreme Court's "concept of a supervisor, for purposes of the agency analysis that it proposed, included a broader range of managers than the senior executives who set policy for an employer." Id.

Based on the foregoing, our courts have ruled that "it is an alleged harasser's functional authority in the workplace, not simply his or her power to hire and terminate a subordinate, that

24

defines his or her status as a 'supervisor.'" Id. at 525-26. The term supervisor thereby "turns on job function, not job title." Id. at 526. An individual is a supervisor under the LAD, on the one hand, if he or she is authorized to undertake tangible employment decisions affecting the employee, including, but not to be limited to, "hiring and firing, promotion and failure to promote, demotion, undesirable reassignment, a decision causing a significant change in benefits, compensation decisions and work assignment," and "suspension" or other "progressive discipline. Id. Second, an individual is a supervisor under the LAD if he is authorized to direct another employee's day-to-day work activities even if that individual does not have the authority to undertake or recommend tangible job decisions. Id. at 527.

In adopting this expansive definition of a supervisor, the New Jersey Supreme Court specifically "decline[d] to adopt the restrictive definition of 'supervisor' prescribed by the Supreme Court majority in [Vance v. Ball State University, 133 S. Ct. 2434, 2443 (2013)]." Id. at 528. Specifically, the Court explained:

> Moreover, this broader definition comports with this Court's holding in Lehmann, in which the Court recognized the importance, in Restatement § 219(2)(d) sexual harassment cases, of a supervisor's authority to control the day-to-day working environment. Lehmann, supra, 132 N.J. at 620, 626 A.2d 445. It is also consistent with the holding in Cavuoti, in which the Court rejected the notion that only the power to hire and terminate a subordinate distinguishes a supervisor from a co-employee. Cavuoti, supra, 161 N.J. at 124-25, 735 A.2d 548. The EEOC definition takes into account the broad range of employer structures and factual settings in which sexual harassment occurs.
>
> Most importantly, the more expansive definition of "supervisor" furthers the paramount goal of the LAD: the eradication of sexual harassment in the workplace. It prompts employers to focus attention not only on an elite group of decision-makers at the pinnacle of the organization, but on all employees granted the authority to direct the day-to-day responsibilities of subordinates, and to ensure that those employees are carefully selected and thoroughly trained.

Id. at 528. The Appellate Division's "review of the cases decided since Lehmann shows that supervisory status depends on the nature of the employer's delegation of authority to the

harassing co-worker. If the co-worker had the authority to control the work environment, any harassing behavior by him or her will cause the employer to be liable." Entrot v. BASF Corp., 359 N.J. Super. 162, 174-75 (App. Div. 2003)

In short, our courts do not employ "a litmus test depending on specific factors (e.g., power to fire or power to control daily tasks)," but rather "make the decision turn on whether the power the offending employee possessed was reasonably perceived by the victim, **accurately or not,** as giving that employee the power to adversely affect the victim's working life." (emphasis added) Thus, objective "indicia as the power to fire and demote, to influence compensation, and to direct all job functions would be probative of supervisory status, but would not exclude other indicia." The crux of the analysis centered upon whether "the alleged harasser controlled the workplace in subtler and indirect ways, as long as the effect was to restrict the victim-employee's freedom to ignore sexually harassing conduct." Id. at 181. The "most important" factor in that case "was plaintiff's claim that [Defendant] directly invoked his job authority over plaintiff as a way to coerce her to submit to his sexual advances." Id. at 185.

That is precisely what Vicari did in the present case to control Plaintiff Pine for so many years. The Complaint makes clear that he "constantly insinuated that if she reported him, she would not only get any future promotions, but Plaintiff would also lose her job." He compelled Plaintiff to attend events with him, so that he could harass her at will, by stating that it was part of her job. He directed Plaintiff to deliver Senior Services paperwork to his home, where he then sexually assaulted her, because he asserted it was part of her job. He directly stated that she did not get a promotion because of him, not only stating, but *proving* that had the ability to control Plaintiff's employment with the County of Ocean. (Complaint, ¶¶31-36, 53-56) And finally, he and the other Defendants retaliated against for her for initially reporting him and filing this

Complaint, as set forth in greater detail above. Defendants can deny these allegations but they cannot obtain a dismissal at this stage as the *allegations* are what controls.

## V.     PLAINTIFF PINE HAS ADEQUATELY PLED CLAIMS FOR RELIEF PURSUANT TO 42 U.S.C.A 1983 AND THE NEW JERSEY CIVIL RIGHTS ACT, AS SEXUAL HARASSMENT IN THE WORK PLACE CONSTITUTES A DEPRIVATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT

### A.     Defendant's Argument With Regard to the §1983 Claims are Frivolous as the Allegations of the Complaint Patently Allege Sexual Harassment and Discrimination in the Work Place, Committed by a State Actor.

It is axiomatic that, in order to state a claim under §1983, Plaintiff Pine must satisfy two primary elements – she must "allege the violation of a right secured by the Constitution and laws of the United States" and she must further allege that the "deprivation was committed by a person acting under color of state of law." West v. Atkins, 487 U.S. 42, 48 (1988) With regard to the first requirement, the Federal Courts within our District have plainly stated that allegations of "sexual harassment and sex discrimination in public employment" set forth "conduct which can amount to a deprivation of their equal protection rights under the Fourteenth Amendment and is actionable under Section 1983." Bair v. City of Atl. City, 100 F. Supp. 2d 262, 267 (D.N.J. 2000). Courts within the Third Circuit have further made clear that "a robust consensus of persuasive authority exists to clearly establish that creating a hostile work environment constitutes a §1983 violation." Starnes v. Butler Cty. Court of Common Pleas, 971 F.3d 416, 428 (3d Cir. 2020).

In order to adequately plead a claim for retaliation under §1983, in turn, a Plaintiff must allege "(1) she complained of sexual harassment; (2) [Defendant] knew she had complained of sexual harassment; and (3) [Defendant] took adverse action against her (4) because of her complaints." Doe, 413 F. Supp. 3d at 407. An action should be deemed adverse if it objectively caused "injury or harm." Id. Finally, our courts have stated, within the context of a motion to

dismiss, "that section 1983 liability may be imposed for adopting and maintaining a practice, custom, or policy of reckless indifference to Plaintiffs' constitutional rights," including the creation of a hostile work environment. Crighton v. Schuylkill Cty., 882 F. Supp. 411, 414 (E.D. Pa. 1995)(citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3d Cir. 1989), cert. den., 493 U.S. 1044 (1990))

    With regard to the "color of state law" requirement, the Third Circuit has stated that individual liability requires an allegation that "the defendant . . . have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " Bonenberger v. Plymouth Twp., 132 F.3d 20, 23 (3d Cir. 1997)(quoting West v. Atkins, 487 U.S. 42, 49 (1988)) Consistent with the expansive definition of supervisor set forth above, the "color of law" requirement is not dependent upon the individual defendant's status as supervisor or whether he has authority to hire, fire, or issue regular evaluations of her work. On the contrary, even absent these powers, a state employee may "wield considerable control over a subordinate whose work he regularly supervises." Id.

    The necessary inquiry requires the court to "look to substance rather than form in determining whether an individual defendant possesses supervisory authority," such that "if a state entity places an official in the position of supervising a lesser-ranking employee and empowers him or her to give orders which the subordinate may not disobey without fear of formal reprisal, that official wields sufficient authority to satisfy the color of law requirement of 42 U.S.C. § 1983." Id. at 24-25. Any contrary conclusion would engender a "perverse incentive" whereby employers may merely avoid using terms such as supervisors, which is precisely the kind of argument that the Defendants have raised in the present case. Id. at 25.

Although the allegations of the Complaint make clear that Vicari and the other defendants had control over Plaintiff's employment, including what transfers and promotions she would receive, all Defendants shamefully argue the contrary. In fact, without even a shred of support (or even a certification from counsel), Defendant Vicari's counsel argues that Vicari had no "authoritative or managerial control" over Plaintiff's employment. (Db31) Vicari's own acknowledgment that Plaintiff Pine did not receive the Director position "because of [him]", (Complaint, ¶56), is in and of itself sufficient to defeat this patent fallacy. Yet even that is unnecessary at this stage. Plaintiff has alleged that the individual defendants, as Commissioners, held some sort of supervisory authority over her position, which included the power to dictate the terms and conditions of her employment. Vicari literally spent decades telling the Plaintiff what her job responsibilities were, and used that authority to not only create a hostile work environment but also to engage in active sexual abuse.

As the Complaint also plainly alleges, each of the individual defendants (Vicari, Haines, Crea, and Maksel) had sufficient authority over Plaintiff's employment, and in fact exercised that authority to 1) create a hostile work environment and sexually harass the Plaintiff for decades (Vicari); 2) threaten the Plaintiff with the loss of her job and other adverse employment consequences (Vicari); 3) aid, abet and contribute to Vicari's hostile work environment and sexual harassment (Vicari, Haines, Crea, and Maksel); and 4) retaliate against the Plaintiff for both reporting Vicari and for filing the instant Complaint (Vicari, Haines, Crea, and Maksel). Plaintiff has more than satisfied the Rule 12(b)(6) standard for asserting a §1983 action against all of the individual defendants.

**B.      Plaintiff Pine's Monell Claim Against Ocean County for Failure to Train is Unassailable.**

It is axiomatic that a "municipality cannot be sued for civil rights violations under the doctrine of respondeat superior" and "can only be held responsible for the deprivation of constitutional rights if a municipal policy or custom of some nature caused the constitutional injury." Bair, 100 F. Supp. at 267 (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978)) The "policy or custom" clearly need not be written to be official, and "may arise in different contexts." In fact, "A municipality's failure to act may also constitute municipal policy where the municipality has knowledge of the need for action and the failure to act rises to the level of 'deliberate indifference' which causes a constitutional injury." Id. at 268; City of Canton v. Harris, 489 U.S. 378, 388 (1989). The New Jersey Courts have equally made clear that a county as the employer may be vicariously liable for sexual harassment committed by county employees if it had knowledge of the harassment but failed to stop it promptly and effectively. Taylor, 152 N.J. at 504.

In short, "deficient training may form a basis for municipal liability under section 1983 only if both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate" are present. Bonenberger, 132 F.3d at 25. Specifically with regard to the standards applicable to the current motion, the Supreme Court of the United States has "held that the liberal notice pleading requirement of Federal Rule of Civil Procedure 8(a)(2) applies to Section 1983 claims alleging municipal liability. … Thus, in order to properly plead a municipal liability claim under Section 1983 there must be a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Bair, 100 F. Supp. at 268

In a decision that evaluated similar claims to those alleged herein (although pled with far less particularity than Plaintiff's Pine's Complaint) the Honorable Robert B. Kugler found:

> [Plaintiffs] allege that their "co-workers and supervisors" engaged in sexual harassment and discrimination, that Defendant Atlantic City "failed to take any appropriate remedial action toward eliminating the hostile work environment" until plaintiffs were transferred out of their departments, that Defendant Atlantic City "knew or should have known" of the harassment and discrimination, and that defendant's supervisors themselves "repeatedly engaged in and encouraged such conduct." Plaintiffs further allege that the "sexually offensive language and conduct described herein created a sexually hostile work environment in violation of the plaintiff's right to equal protection under the 14th Amendment to the United States Constitution." Plaintiffs further allege that "defendant's aforesaid actions constituted a pattern of conduct which established a policy of acceptance and toleration of discrimination against women and the promotion of sexually hostile work environments in the construction department and throughout the municipal government." Although plaintiffs' allegations are set forth in somewhat conclusory terms, and plaintiffs do not identify their supervisors or whether their supervisors were policymaking officials, those details can be developed through factual discovery. Plaintiffs need not state the facts supporting their claims with heightened specificity nor prove their claims at this early pleading stage.

Bair v. City of Atl. City, 100 F. Supp. 2d 262, 268 (D.N.J. 2000)(citations omitted) Even though allegations stated in "conclusory terms" would have been sufficient, Plaintiff has gone far beyond mere notice pleading, providing sufficient detail to defeat a motion to dismiss.

Finally, in Hurley v. Atlantic City Police Department, 174 F.3d 95 (3d Cir.1999), cert. denied, 528 U.S. 1074 (2000), the Third Circuit held that "[e]vidence of other acts of harassment is extremely probative as to whether the harassment was sexually discriminatory and whether the . . . [defendant municipality] knew or should have known that sexual harassment was occurring despite the formal existence of an antiharassment policy." The Supreme Court of the United States has stated that a municipal employer's knowledge of harassing behavior coupled with a failure to stop the harassment, will result in municipal liability under §1983 because "In such instances the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been

authorized affirmatively as the employer's policy." Whitaker v. Mercer Cty., 65 F. Supp. 2d 230, 243 (D.N.J. 1999)(quoting Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2284 (1998))

     In the present case, Plaintiff has adequately pled a §1983 cause of action against the individual defendants, as set forth above, which is a prerequisite before establishing the municipality's liability. The specific contours of OC's custom and policy, moreover, are set forth in the allegations that OC was acutely aware of Vicari's sexual harassment and abuse (both as a result of Plaintiff Pine's complaints, as well the 2014 filing of a similar lawsuit alleging sexual discrimination by Rosemary Mennona) and that OC did absolutely nothing in response – other than retaliate against the Plaintiff. (Complaint, ¶¶114-120)

     The Complaint further makes clear that in all of the years Plaintiff  has been employed with the Defendant, County of Ocean she has only received training *one time*  prior to reporting the harassment and hostile work environment that she endured. Despite the prior lawsuit filed in 2014, Rosemary Mennona v. Joseph Vicari, et al., Defendant OC failed to provide training to all of their employees. (Complaint, ¶¶117-120) Although unnecessary at the pleading stage in response to a Motion to Dismiss (as Plaintiff is not required to produce anything other than well-pled allegations) the minimal evidence that exists establishes OC's utter lack of training. OC conducted both Discrimination and Accommodation Training as well Harassment and Discrimination Training for Supervisors on multiple occasions since 2003. In fact, since 2003 there have been hundreds of them, which facially sounds impressive and proactive – the problem is that, as the attached attendance documents make clear, no one attended them, nor apparently was required to attend them. Of the hundreds of sessions offered, nearly all of them had 0 enrollees. (Exhibit A – Training Documents)

    **C.**    **Because the New Jersey Civil Rights Act Is Interpreted in Accordance with §1983, Plaintiff Pine Has Adequately Alleged a Claim.**

New Jersey's Civil Rights Act ("CRA"), the basis for Count IV in the Plaintiff's

Complaint, states in relevant part:

> Any person who has been deprived of any substantive due process or equal
> protection rights, privileges or immunities secured by the Constitution or laws of
> the United States, or any substantive rights, privileges or immunities secured by
> the Constitution or laws of this State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been interfered with or attempted
> to be interfered with, by threats, intimidation or coercion by a person acting under
> color of law, may bring a civil action for damages and for injunctive or other
> appropriate relief.

N.J.S.A. 10:6-2(c); Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 468 (App. Div. 2012).

Because the elements of a claim or violation under this statute are the same as the Federal Civil

Rights Act of 1871, 42 U.S.C.A. § 1983, a Plaintiff must identify 1) the state actor that has

caused the alleged deprivation; and 2) a 'right, privilege or immunity' secured to the claimant by

the Constitution.  Id. The Courts of the State of New Jersey have thereby stated that the elements

of a claim pursuant to the CRA are identical to the elements of a claim asserted pursuant to

§1983, as the "New Jersey statute was modeled after §1983." Rezem Family Associates, LP v.

Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011). Federal cases within the Third

Circuit equally maintain that "the NJCRA is interpreted analogously with §1983." Hottenstein v.

City of Sea Isle City, 977 F. Supp. 2d 353, 365 (D.N.J. 2013).

In the present case, Plaintiff Pine has adequately pled a claim pursuant to §1983, and thus

Plaintiff has equally alleged a claim under the CRA. Plaintiff Pine has specifically identified all

of the state actors that created, aided, abetted or otherwise contributed to the hostile work

environment, and has made clear that the right that has been infringed is her right to be free from

sexual harassment and abuse in the public employment. Once again, no more is required.

33

VI.    Conclusion

For the forgoing reasons, this Court should not only deny the pending Motions but should further rule that they were frivolous and without merit.


Respectfully submitted,

**LAW OFFICES OF RILEY & RILEY**

Tracy L. Riley

Dated: August 20, 2022